DocuSign Envelope ID: 2F8C3BE3-C354-49FD-B4C0-0DCD5AF75147

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MCKESSON MEDICAL-SURGICAL MINNESOTA SUPPLY INC., a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>THRIVE SKILLED PEDIATRIC CARE, LLC, a Delaware limited liability company; and SUMMIT PARTNERS, L.P., a Delaware limited partnership,<br><br>Defendants. | Case No. 24-CV-00172-MN<br><br>[redacted]<br><br>[PUBLIC VERSION] |

**<u>DEFENDANT SUMMIT PARTNERS, L.P.'S OPENING BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>**

Dated: June 21, 2024

Joseph P. Rockers*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
JRockers@goodwinlaw.com
**Pro hac vice forthcoming*

Peter B. Ladig (No. 3513)
Ronald P. Golden III (No. 6254)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302)429-4219
pladig@baylardlaw.com
rgolden@bayardlaw.com

*Attorneys for Defendant Summit Partners, L.P.*

# TABLE OF CONTENTS

Page


NATURE AND STAGE OF PROCEEDINGS ..... 1

SUMMARY OF ARGUMENT ..... 1

STATEMENT OF FACTS ..... 2

A. The parties and the Product Supply Agreement. ..... 2

B. Thrive experiences financial difficulties. ..... 4

C. McKesson adds Summit to this lawsuit on the basis of speculative allegations concerning Summit's relationship with Thrive. ..... 6

LEGAL STANDARD ..... 7

ARGUMENT ..... 7

I. MCKESSON FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL. ..... 8

A. McKesson's promissory estoppel claim fails because the SAC fails to identify a clear and definite promise made by Summit. ..... 8

B. The existence of an express contract requires dismissal of McKesson's promissory estoppel claim. ..... 10

II. MCKESSON FAILS TO STATE A CLAIM FOR EQUITABLE ESTOPPEL. ..... 12

III. MCKESSON'S CLAIMS FOR PROMISSORY AND EQUITABLE ESTOPPEL SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND BECAUSE MCKESSON CANNOT STATE A CLAIM FOR RELIEF AS A MATTER OF LAW. ..... 13

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .......... 2, 7

*Capital Midwest Fund, LP v. Johnson*,
2014 WL 3396580 (Minn. App. July 14, 2024) .......... 11, 12

*Carlson v. Carlson*,
300 N.W. 900 (Minn. 1941) .......... 9

*Cavi v. Evolving Sys., Inc.*,
2017 WL 658470 (D. Del. Feb. 17, 2017) .......... 8

*Clear Wave Hearing Instruments, Inc. v. Starkey Holding Corp.*,
2012 WL 949953 (D. Minn. Mar. 20, 2012) .......... 11

*Cunningham Implement Co. v. Deere & Co.*,
1995 WL 697555 (Minn. Ct. App. Nov. 28, 1995) .......... 9

*Genencor Int'l, Inc. v. Novo Nordisk A/S*,
766 A.2d 8 (Del. 2000) .......... 8

*Gillespie v. Hocker*,
2015 WL 4468922 (D. Del. July 22, 2015) .......... 8

*Hydra–Mac, Inc. v. Onan Corp.*,
450 N.W.2d 913 (Minn. 1990) .......... 12

*Krutchen v. Zayo Bandwith Northeast, LLC*,
591 F. Supp. 2d 1002 (D. Minn. 2008) .......... 10

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004) .......... 7

*Martens v. Minnesota Min. & Mfg. Co.*,
616 N.W.2d 732 (Minn. 2000) .......... 8, 10

*Martin v. A'BULAE, LLC*,
2016 WL 3659293 (Minn. Ct. App. July 11, 2016) .......... 13

*Odens Family Props., LLC v. Twin Cities Stores, Inc.*,
393 F. Supp. 2d 824 (D. Minn. 2005)........11

*Ruud v. Great Plains Supply, Inc.*,
526 N.W.2d 369 (Minn. 1995)........8, 9, 10

*Stanley Black & Decker, Inc. v. Gulian*,
70 F. Supp. 3d 719 (D. Del. 2014)........7

*Tharaldson v. Ocwen Loan Servicing, LLC*,
840 F. Supp. 2d 1156 (D. Minn. 2011)........8

**Other Authorities**

Rule 12(b)(6)........7

## NATURE AND STAGE OF PROCEEDINGS

On February 9, 2024, Plaintiff McKesson Medical-Surgical Minnesota Supply, Inc. ("McKesson") filed a Complaint stating a relatively straightforward breach of contract action against Defendant Thrive Skilled Pediatric Care, LLC ("Thrive"). D.I. 1. The Amended Complaint was filed shortly thereafter and relied upon a similar nucleus of operative facts. D.I. 15. Summit Partners, L.P. ("Summit"), a private equity firm with funds that invest in Thrive, was not a party to either pleading, nor was it a party to the contract between McKesson and Thrive. Nearly three months later, on May 10, 2024, McKesson filed a Second Amended Complaint ("SAC") that presented a dramatically different narrative of its payment dispute to ask that Summit be held liable—both directly and as a matter of equity—for damages arising from Thrive's alleged breach of its agreement with McKesson. D.I. 19. Summit now brings this partial motion to dismiss Counts VII and VIII of the SAC.

## SUMMARY OF ARGUMENT

This is a run-of-the-mill contract dispute arising out of an alleged breach of a fully integrated product supply agreement negotiated and executed by two sophisticated parties: Thrive, a pediatric in-home healthcare provider, and McKesson, its wholesale distributor of medical-surgical products and equipment. Summit—a private equity firm managing a broad portfolio of investments, including Thrive—is not a party to that agreement nor did it receive any of the products and services delivered pursuant to the contract. Nevertheless, McKesson dragged Summit into the middle of this dispute after Thrive fell behind in paying McKesson's invoices, periodically demanding reassurances from Summit representatives regarding Thrive's ability and plans to pay.

McKesson now takes a scattershot approach to pursue the $6 million it claims it is owed by Thrive that places Summit directly in the crossfire. In the SAC, McKesson alleges that Summit is not only directly liable for Thrive's alleged breach of contract and associated damages under an alter ego theory, but independently liable for equitable claims arising from actions McKesson took based on the noncommittal "assurances" it demanded from Summit's representatives. Two of these equitable claims—promissory estoppel and equitable estoppel—are improperly used as an opportunity to unilaterally rewrite McKesson's express agreement with Thrive. The existence of a fully integrated written agreement that controls all issues relating to the McKesson's distribution arrangement with Thrive, including the event of nonpayment by Thrive, defeats McKesson's claims for promissory and equitable estoppel as a matter of law. Even if such an agreement did not exist, however, the purported "assurances" on which McKesson allegedly relied are, at most, expressions of expectation that a resolution could be reached at some point in the future and cannot provide the basis for a legally cognizable cause of action. For these reasons and those set forth below, Summit respectfully requests that the Court dismiss Counts VII and VIII of the SAC with prejudice.

## STATEMENT OF FACTS[1]

### A. The parties and the Product Supply Agreement.

Summit is a Boston-based private equity firm whose investments include a number of companies within the healthcare and life sciences sectors. SAC ¶¶ 3, 9. Summit's portfolio companies include Thrive, a healthcare company that facilitates the provision of in-home pediatric

[1] Summit bases this Statement of Facts on (i) the SAC's non-conclusory allegations, which Summit accepts as true only for purposes of this motion to dismiss, and (ii) the Product Supply Agreement, dated July 1, 2020, entered into by and between McKesson and Thrive, which is integral to, and referenced throughout, the SAC. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that "a document integral to or explicitly relied upon in the complaint may be considered" at the motion to dismiss stage (quotation marks and emphasis omitted)).

care across the U.S. SAC ¶ 20. In June 2018, Thrive appointed wholesale distributor McKesson to serve as the "Prime Distributor" for Thrive's purchase of medical-surgical products and equipment, nutritionals, and general merchandise pursuant to a Product Supply Agreement (the "2018 PSA"). SAC ¶¶ 21, 26. On July 1, 2020, Thrive and McKesson renewed this arrangement by executing a new Product Supply Agreement (the "PSA"), which superseded the 2018 PSA. SAC ¶ 25.[2] Summit is not a party to either agreement.

The PSA is a fully integrated agreement that sets forth the terms governing all aspects of McKesson's distribution agreement with Thrive. It provides that, as Prime Distributor, McKesson will be the "first choice" for Thrive in purchasing products normally acquired through medical-surgical distributors for Thrive and any home medical equipment location for which Thrive would select a medical-surgical distributor (collectively, the "Locations"). PSA § 1.1. [redacted]

[2] A copy of the PSA is attached hereto as Exhibit A. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the PSA.

[redacted] The Terms and Conditions provide that the PSA is governed by Minnesota law. PSA § 1.13.

[redacted]

[redacted]

[redacted]

[redacted]

### B. Thrive experiences financial difficulties.

The SAC alleges that, at some point in 2022, Thrive fell behind on its payments to McKesson for products delivered pursuant to the PSA. SAC ¶ 33. McKesson engaged in an ongoing dialogue regarding the outstanding balance with members of Thrive's management team between May 2022 and February 2023, during which time Thrive allegedly failed to make various

promised payments. SAC ¶¶ 34-40. On February 28, 2023, McKesson advised Thrive that Thrive had until March 9, 2023 to pay the accumulated $3.5 million in past due accounts or be placed on a shipping hold. SAC ¶ 40. In response, Thrive reportedly advised that it would seek financing from Summit and requested time to do so before a shipping hold took effect. SAC ¶ 41. McKesson responded by demanding "assurances" from Summit that the Thrive accounts would be paid. SAC ¶ 41. Thrive, understandably resistant to involve an outside investor in its payment dispute, pushed back on this request, but ultimately relented upon McKesson's insistence. SAC ¶ 42.

On March 11, 2023, McKesson allegedly exchanged emails regarding Thrive's overdue balance with the two Summit representatives who sat on Thrive's Board of Directors. SAC ¶¶ 43-45. Summit conveyed to McKesson that it shared a desire to see the payment issue resolved "as soon as possible," and stated that "Summit has a deep commitment to Thrive." SAC ¶ 44. Summit also related that the "situation [was] getting an appropriate amount of attention internally." *Id.*

A call between Summit and McKesson followed on March 13, 2023, during which McKesson allegedly agreed that it would refrain from imposing a shipping hold so long as Thrive's past due balance stayed below $3.5 million to allow Thrive time to propose an agreeable payment plan. SAC ¶ 46. The cited evidence of this alleged agreement in the SAC is an email in which Summit relays that it "passed along [McKesson's] feedback re: the $3.5M balance" and that the Thrive team "understands" and would "work on a firm plan" with its new chief executive officer. SAC ¶ 48.

During the months that followed McKesson's March 13, 2023 conversation with Summit, Thrive made periodic payments to McKesson to keep its outstanding balance below the $3.5 million threshold. SAC ¶ 51. McKesson continued providing shipments through the end of July 2023, allegedly based on "assurances" from Summit and Thrive that a payment plan would be

forthcoming. SAC ¶¶ 53-59. On July 27, 2023, McKesson began limiting shipments to Thrive and requiring prepayment for certain shipments. SAC ¶ 63.

Though McKesson asserts in conclusory fashion that it received "numerous promises and assurances" from Summit during this time period (SAC ¶ 64), the SAC identifies only two interactions with Summit during the four months that elapsed between its initial March 13, 2023 phone call with Summit and McKesson's decision to limit shipments on July 27, 2023. *First*, on May 12, 2023, Summit provided a same-day response to a request for a meeting among Summit, McKesson, and Thrive's new Chief Financial Officer, writing: "Let me get with [Thrive's new Chief Financial Officer] and will get this sorted out." SAC ¶ 54. The requested meeting was held five days later, after which Thrive provided a payment plan that McKesson did not find "agreeable." SAC ¶ 55. *Second*, on July 14, 2023, Summit responded to an email in which McKesson advised that it could not continue to carry Thrive's balance by stating that Thrive's CFO had been informed that someone from McKesson would be "reaching out to align on plan." SAC ¶ 59. McKesson also alleges it received unspecified "promises and assurances" from Summit *after* it began limiting shipments in late July but does not purport to have adjusted its position in response and, indeed, placed a hold on Thrive's shipments a week later. SAC ¶ 65.

### C. McKesson adds Summit to this lawsuit on the basis of speculative allegations concerning Summit's relationship with Thrive.

McKesson strains to hold Summit liable for Thrive's alleged breaches of the PSA. In doing so, the SAC recasts as sinister a series of unremarkable alleged events that would be common of the relationship between any private equity firm and its portfolio companies—e.g., that Summit allegedly provided rescue financing for Thrive (SAC ¶ 88) and was involved in the sale of one Thrive's assets (SAC ¶ 84)—to allege that Thrive and Summit "operate as a single economic entity." SAC ¶ 79. McKesson relies on this theory of alter ego liability to allege that Thrive and

McKesson are jointly liable for six causes of action arising out of the PSA: alter ego (Count I); breach of written contract (Count II); goods sold and delivered (Count III); unjust enrichment (Count IV); account stated (Count V); and quantum meruit (Count VI). McKesson additionally asserts two equitable claims against only Summit based upon the "assurances" Summit allegedly provided to McKesson: promissory estoppel (Count VII) and equitable estoppel (Count VIII). For the reasons set forth herein, these equitable claims fail as a matter of law and must be dismissed.

## LEGAL STANDARD

Under Rule 12(b)(6), a claim must be dismissed if a plaintiff fails to allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false[.]" *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 726 (D. Del. 2014). In deciding motions to dismiss pursuant to Rule 12(b)(6), a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

## ARGUMENT

Counts VII and VIII of the SAC rely on the same set of allegations to assert largely identical causes of action against Summit for promissory estoppel and equitable estoppel, respectively. McKesson has failed to state a claim under either Count. McKesson's promissory estoppel claim fails at the threshold as the SAC does not identify a single definite promise made by Summit that is actionable as a matter of law. And, even if McKesson could get past that gating issue, the existence of an express written agreement addressing McKesson's rights in its distribution arrangement with Thrive acts as an independent bar to estoppel under either theory and warrants

dismissal with prejudice as to both claims.

## I. McKESSON FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL.

Under Minnesota law,[3] a party seeking to establish a claim for promissory estoppel must show: "(1) a clear and definite promise; (2) [that] the promisor intended to induce reliance and such reliance occurred to the promisee's detriment; and (3) [that] the promise must be enforced to prevent injustice." *Tharaldson v. Ocwen Loan Servicing, LLC*, 840 F. Supp. 2d 1156, 1163 (D. Minn. 2011) (citing *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000)). McKesson cannot make out a cognizable claim for promissory estoppel because (a) there was no "clear and definite" promise on the part of Summit; and (b) even if such a promise had been made, McKesson's written agreement with Thrive makes McKesson's reliance on any supposed promises by Summit unreasonable as a matter of law.

### A. McKesson's promissory estoppel claim fails because the SAC fails to identify a clear and definite promise made by Summit.

A claim for promissory estoppel requires proof of a promise that is "sufficiently clear and definite to be enforceable" such that the promisor should have "reasonably expect[ed] to induce reliance." *Martens*, 616 N.W.2d at 746. Put differently, the alleged promise must be specific and definite enough as to its terms that it leaves no doubt that the promisor intended to extend an offer for contract. *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn. 1995) (identifying the issue as one of determining "whether there was an intention to make [] a promise as an offer

---

[3] Summit must accept as true McKesson's baseless allegations that Summit and Thrive are a "single economic entity" at the motion to dismiss stage and accordingly assumes solely for the purposes of this motion that it is bound by the terms of the PSA, including the PSA's controlling law provision. PSA § 1.13. McKesson's claims would fail under Delaware law for the same reasons stated herein. *See Gillespie v. Hocker*, 2015 WL 4468922, at *8 (D. Del. July 22, 2015) (noting that "[m]ere expressions of opinion, expectation or assumption are insufficient" cannot form the basis for a promissory estoppel claim under Delaware law); *Cavi v. Evolving Sys., Inc.*, 2017 WL 658470, at *10 (D. Del. Feb. 17, 2017) (dismissing promissory estoppel claim in light of express agreement between parties); *Genencor Int'l, Inc. v. Novo Nordisk A/S*, 766 A.2d 8, 12 (Del. 2000) (equitable estoppel not applicable in disputes that concern enforcement of bargained-for contract rights).

and to be bound by it"). Accordingly, generalized assurances and "mere expressions of future intent" do not constitute actionable promises as a matter of law. *Id.* at 372 (employer's statement that "there would be no dismissals as long as people showed willingness to work and the ability and wanting to learn" did not constitute clear and definite promise as a matter of law); *Carlson v. Carlson,* 300 N.W. 900, 902 (Minn. 1941) (cautioning that a court should not attach promissory and contractual effect to what was at the time a mere expression of intent concerning future action).

McKesson does not and cannot allege that Summit made a "clear and definite" promise on which McKesson relied. As an initial matter, the SAC contains no allegations that Summit directly promised anything *to McKesson*; rather, McKesson alleges that Summit made a supposed promise to provide financing *to Thrive.* SAC ¶ 137. In other words, McKesson has not pleaded that Summit extended an offer that was intended to create a unilateral contract *between McKesson and Summit.* This alone defeats any claim for promissory estoppel. *See, e.g.*, *Cunningham Implement Co. v. Deere & Co.*, 1995 WL 697555, at *4 (Minn. Ct. App. Nov. 28, 1995) (affirming dismissal of promissory estoppel claim that attempted to enforce assignment clause of contract to which plaintiff was not a party because "[a] clear and definite promise requires a link directly between promisor and promisee").

Moreover, the statements alleged in the SAC contain—at best—only expressions of expectation that a resolution could be worked out between Thrive and McKesson at some future date. On March 11, 2023, Summit stated that it shared McKesson's desire to "resolve the situation at Thrive as soon as possible" and conveyed Summit's "deep commitment to Thrive." SAC ¶ 44. Two days later, on March 13, 2024, Summit allegedly related that it would "work [with Thrive's new CEO] on a firm plan" so that the parties could "align on something that it mutually agreeable." SAC ¶ 48. When McKesson contacted Summit about the matter again in mid-July 2023, Summit

responded only that it had informed Thrive that McKesson would be "reaching out to align on plan." SAC ¶ 59. These statements fall far short of the "clear and definite" promises required to state a claim for promissory estoppel. Summit states only that "work on a firm plan" that would be "mutually agreeable" was in process without any providing any details regarding the terms or timing that plan would propose. Indeed, Summit does not even commit to a timeframe for providing those details, let alone assure McKesson that a certain resolution will be reached. In the absence of such specifics, Summit's statements amount to little more than expressions of future intent and do not constitute promises that can or should be enforced as a matter of equity. *See Martens*, 616 N.W.2d at 746 (promotion framework accompanied by statement that employer intended to "reward [employees] for their progress" did not constitute "clear and definite" promise of advancement because it did not promise that any individual employee would be "entitled to a specific pay, benefit level, or condition of employee"); *see also Ruud*, 526 N.W.2d at 372 (claims for promissory estoppel properly dismissed where alleged promise is vague and indefinite).

**B. The existence of an express contract requires dismissal of McKesson's promissory estoppel claim.**

McKesson's promissory estoppel claim fails for the independent reason that the doctrine is unavailable in light of the PSA. "Promissory estoppel is an equitable doctrine that impl[ies] a contract in law *where none exists in fact*." *Martens*, 616 N.W.2d at 746 (alteration in original) (emphasis added). Accordingly, "[t]he doctrine does not apply when an actual contract has been formed." *Krutchen v. Zayo Bandwith Northeast, LLC*, 591 F. Supp. 2d 1002, 1017-1018 (D. Minn. 2008) (citing *Gorham v. Benson Optical*, 539 N.W.2d 798, 801-802 (Minn. Ct. App. 1995)).

Here, McKesson entered into a contract with Thrive dictating the terms on which McKesson would serve as Thrive's Prime Distributor, including McKesson's rights in the event of nonpayment or where Thrive's [redacted]

[redacted] There is no dispute over the existence or validity of this agreement—indeed, McKesson premises the first six counts of the SAC on the PSA—yet McKesson now asserts that Summit's extra-contractual "oral and written promises and assurances to McKesson that the amounts owed to McKesson by Thrive would be paid" should be enforced and Summit required to pay Thrive's obligations under the PSA as matter of equity. SAC ¶ 132. McKesson may not use an equitable doctrine to circumvent the unambiguous language of the PSA and its attempt to do so in Count VII should be rejected outright. *See Odens Family Props., LLC v. Twin Cities Stores, Inc.*, 393 F. Supp. 2d 824, 829 (D. Minn. 2005) ("[P]romissory estoppel cannot be used to alter the terms of a contract that has been reduced to writing." (citations omitted)).

That Summit is not a party to the PSA does nothing to change this result, as the PSA and its terms makes it unreasonable for McKesson to have relied on Summit's alleged "assurances" regarding payment.[4] *Capital Midwest Fund, LP v. Johnson*, 2014 WL 3396580 (Minn. App. July 14, 2024), is instructive here. In *Capital Midwest*, plaintiffs alleged that they invested in a start-up that was marketing a medical technology developed by the University of Minnesota. *Id.* at *1. After that start-up failed and filed for bankruptcy two months later, plaintiffs alleged that one of the start-up's directors assured them that he and the University would "take care of [them]" and, as a consequence, plaintiffs chose not to file claims against the company in bankruptcy court. *Id.* at *2. Plaintiffs brought a promissory estoppel claim based in part on this assurance. The district court dismissed the claim and the appeals court affirmed on the grounds that plaintiffs had executed

---

[4] McKesson has alleged that Thrive and Summit are a "single economic entity" such that Summit steps into Thrive's shoes with respect to Thrive's obligations under the PSA. SAC ¶ 96. McKesson has thus pleaded that Summit is bound to the terms governing its relationship with McKesson and cannot maintain a claim for promissory estoppel, even in the alternative. *See Clear Wave Hearing Instruments, Inc. v. Starkey Holding Corp.*, 2012 WL 949953, at *7 (D. Minn. Mar. 20, 2012) (dismissing promissory estoppel claim because "Plaintiffs are not entitled to plead equitable claims in the alternative" where "a valid contract indisputably governs").

agreements in connection with their investment that expressly disclaimed any promises extrinsic to the contract, which accordingly rendered plaintiffs' reliance on the later alleged "extrinsic promises" of the director "unreasonable as a matter of law." *Id.* So too here. McKesson is a sophisticated party that executed a detailed, fully integrated written agreement governing its distribution arrangement with Thrive. That agreement expressly disclaimed any extracontractual representations, warranties, or promises, and stated it could only be modified in a writing signed by both parties. PSA § 9. To rely on alleged oral and written "assurances" from Summit—a non-party to that agreement—is unreasonable as a matter of law.

In short, McKesson has not identified a definite promise by Summit that could form the basis for a claim of promissory estoppel and, even if it had, McKesson's reliance on that promise would have been unjustified as a matter of law in light of the PSA. Count VII fails accordingly.

## II. McKESSON FAILS TO STATE A CLAIM FOR EQUITABLE ESTOPPEL.

McKesson's claim for equitable estoppel fares no better. Under Minnesota law, a claim for equitable estoppel must satisfy three elements: "(1) that promises or inducements were made; (2) that [plaintiff] reasonably relied upon the promises; and (3) that [plaintiff] will be harmed if estoppel is not applied." *Hydra–Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990). McKesson has not pleaded facts that establish reasonable reliance on the assurances allegedly provided by Summit regarding Thrive's plans and ability to pay its liabilities. [redacted] McKesson's decision to delay enforcing its rights under that agreement "based on an alleged oral promise" made by Summit—a non-party to the contract—that was "unenforceable under the terms [of the

PSA]" was "unreasonable, as a matter of law." *Martin v. A'BULAE, LLC*, 2016 WL 3659293, at *2 (Minn. Ct. App. July 11, 2016) (dismissing equitable estoppel claim based on alleged oral promise regarding payment for tenant improvement where matter was governed by written agreement that provided it could only be only be modified by further written agreement). Count VIII should accordingly be dismissed for failure to state a claim.

## III. McKESSON'S CLAIMS FOR PROMISSORY AND EQUITABLE ESTOPPEL SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND BECAUSE McKESSON CANNOT STATE A CLAIM FOR RELIEF AS A MATTER OF LAW.

McKesson does not dispute that it is a party to an express and fully integrated agreement that sets forth the terms on which McKesson would serve as the "Prime Distributor" for Thrive. There is no alternate set of facts under which McKesson can prove that it was reasonable to set aside the terms of the written agreement in reliance on purported assurances from a third-party. As reasonable reliance is an essential element to state a claim for both promissory and equitable estoppel, leave for McKesson to amend its complaint for a third time would prove futile. Dismissal with prejudice is warranted for Counts VII and VIII under these circumstances. *Wright v. United States*, 2023 WL 4540469, at *2 (3d Cir. July 14, 2023) (affirming dismissal with prejudice where it would have been "futile" to allow plaintiff to file "yet another amended complaint").

## CONCLUSION

For all the foregoing reasons, Summit respectfully requests that this Court grant its motion to dismiss Counts VII and VIII of the SAC with prejudice.

Dated: June 21, 2024

Respectfully submitted,

*/s/ Peter B. Ladig*
Peter B. Ladig (No. 3513)
Ronald P. Golden III (No. 6254)
600 N. King Street, Suite 400
P.O. Box 25130
Wilmington, DE 19899
Telephone: (302) 429-4219
pladig@bayardlaw.com
rgolden@bayardlaw.com

Joseph P. Rockers*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-3976
JRockers@goodwinlaw.com
**Pro hac vice forthcoming*
*Attorneys for Defendant Summit Partners, L.P.*

# EXHIBIT A

# (Product Supply Agreement)

# *Submitted Under Seal*

**Davies, Joanne N.**

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Friday, June 28, 2024 10:51 AM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:24-cv-00172-MN McKesson Medical-Surgical Minnesota Supply Inc. v. Thrive Skilled Pediatric Care, LLC Declaration |

This message has originated from an **External Email**. ded_nefreply@ded.uscourts.gov:

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
*****NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

## Notice of Electronic Filing

The following transaction was entered by Powell, Jason on 6/28/2024 at 1:50 PM EDT and filed on 6/28/2024

| | |
|---|---|
| **Case Name:** | McKesson Medical-Surgical Minnesota Supply Inc. v. Thrive Skilled Pediatric Care, LLC |
| **Case Number:** | 1:24-cv-00172-MN |
| **Filer:** | McKesson Medical-Surgical Minnesota Supply Inc. |
| **Document Number:** | 31 |

**Docket Text:**
**DECLARATION re [30] MOTION to Seal -- *Plaintiff's Motion for Leave to File Under Seal* by McKesson Medical-Surgical Minnesota Supply Inc.. (Attachments: # (1) Exhibit 1, # (2) Certificate of Service)(Powell, Jason)**

**1:24-cv-00172-MN Notice has been electronically mailed to:**

Andrew Russell arussell@shawkeller.com, cal@shawkeller.com

Jason C. Powell jpowell@delawarefirm.com, dtroiano@delawarefirm.com

Joanne N. Davies jdavies@buchalter.com, gtooley@buchalter.com

Lindsey Michelle Gellar lgellar@shawkeller.com, cal@shawkeller.com

Peter B. Ladig pladig@bayardlaw.com, lfracek@bayardlaw.com, ntalarowski@bayardlaw.com

**1:24-cv-00172-MN Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/28/2024] [FileNumber=5584973-0
] [d67f33eea41118239daf0e34da9ba4e0227a74ea3c3d2a39e7e6dbaa195ffb03e72
fdc1f7e3e172593fa438b007c631045e2857dcf59f6e948257ad2f2ab404d]]
**Document description:**Exhibit 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/28/2024] [FileNumber=5584973-1
] [c7fa2e20c0c4eb0a84e7c54e312baba26d66662512d983676e6ef4c2889dc89a061
263759b806a2adb18f4872a2ad3e1b05f557389e32840f03bb30e938a6a79]]
**Document description:**Certificate of Service
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=6/28/2024] [FileNumber=5584973-2
] [2994e9e95cb9f14ca008285991331ed5350d0f35e637175c0d27bbd13ec14445370
cea22c9dee7f2310a8b63c287ac24ddb197b89b717564532189e3b9929051]]